Per Curiam::
This case was referred to Trial Commissioner Mastin G. White with directions to make findings of fact and recommendation for conclusion of law. The commissioner has done so in a report and opinion filed on November 3, 1966. Exceptions to the commissioner’s opinion, findings and recommendation for conclusion of law were filed by the plaintiff and the case was submitted to the court on the brief of the plaintiff and oral argument of counsel. The defendant elected to submit the case on the commissioner’s report without exceptions and brief. Since the court is in agreement with the opinion and findings and recommendation of the commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Plaintiff is, therefore, not entitled to recover and the petition is dismissed.
*505 Commissioner White’s opinion,* as modified by the court, is as follows:
In the first count of the petition, the plaintiff seeks to recover $5,394.95, representing the amount of the rental allegedly due for an 11-month period under a lease of office space from the plaintiff to the defendant. The plaintiff seeks in the second count of the petition to recover $11,207, representing the cost of restoring the leased premises, after they were vacated by the defendant, to the condition existing as of the time when the lease was negotiated.
It is my opinion that the plaintiff is not entitled to recover on either count.

First Count

The plaintiff, Miami Metropolitan Building Corporation, operates a major downtown office building located at 117 N.E. First Avenue in Miami, Florida. At the time involved in the present litigation, the building was known as the Metropolitan Bank Building.
The plaintiff leases space in its building to commercial tenants. Also, from time to time, the plaintiff has leased office space to the defendant.
As of January 31, 1963, the plaintiff and the defendant entered into a lease that was numbered GS-04B-8679. Under this lease, the plaintiff leased to the defendant 1,731 square feet of office space on the sixth floor of its building for a firm term of one year from February 8, 1963 to February 7, 1964, at an annual rental of $5,885.40.
The lease contained in paragraph 5 a renewal provision reading as follows:
5. This lease may, at the option of the Government, be renewed from year to year at a rental of Five Thousand, Eight Hundred, Eighty Five Dollars, Forty Cents ($5,885.40) per annum and otherwise upon the terms and conditions herein specified, provided notice 'be given in writing to the Lessor at least thirty (30) days before this lease or any renewal thereof would otherwise expire : Provided that no renewal thereof shall extend the period of occupancy of the premises beyond the 7th day of February, 1966.
*506 The lease also contained in paragraph 13 a cancellation provision reading as follows:
13. The Government hereby reserves the right to cancel this lease in whole or part, effective on or after February 7, 1964, upon sixty (60) days’ written notice to the Lessor, such notice to be computed from the date, of mailing, and no rental shall accrue after the effective date of termination.
The defendant’s occupancy of the leased premises began on or about February 8,1963.
Under the date of December 23, 1963, a representative of the defendant sent to the plaintiff a renewal notice relative to lease No. GS-04B-8679. The notice stated as follows:
Notice is hereby given, in accordance with the terms of the subject lease, that the United States of America the 23rd day of December 1963, elects to renew said lease (and all operative supplements thereto), and by these presents does renew, extend, and adopt the said lease in all its terms and conditions for the period beginning February 8, 1964, and ending February 7, 1965.
Eleven days later, on January 3,1964, the following communication was sent by a representative of the defendant to the plaintiff:
Beference is made to Lease Number GS-04B-8679 dated January 31, 1963 covering approximately 1,731 square feet of space contained in Booms 610 through 617 of the Metropolitan Bank Building located at 117 N.E. First Avenue, Miami, Florida.
The Government hereby cancels said lease, effective midnight, March 7,1964.
This notice is given in conformance with the sixty days’ notice required under the terms of the lease.
The defendant vacated the leased premises and ceased to pay rent on March 7,1964.
The 1,731 square feet of office space involved in lease No. GS-04B-8679 remained vacant throughout the period beginning March 8,1964 and extending through February 7,1965. The rental for this period under lease No. GS-04B-8679 would have been $5,394.95, the amount which the plaintiff seeks to recover under the first count of the petition.
The plaintiff asserts in the petition that the “purported cancellation is contrary to the terms and conditions of the sub *507 ject lease.” In this connection, the plaintiff points out that the lease in paragraph 13 granted to the Government “the right to cancel this lease in whole or part, effective on or after February 7,1964, upon sixty (60) days’ written notice to the Lessor”; and the plaintiff contends that since the cancellation notice was dated January 3,1964, it was “ineffective by the express terms and conditions of the subject lease * * In other words, the plaintiff interprets paragraph 13 of the lease as authorizing the Government to issue a cancellation notice only “on or after February 7,1964,” and the plaintiff argues that the cancellation notice which the Government gave the plaintiff under the earlier date of January 3,1964 was a nullity.
The plaintiff has misread paragraph 13 of the lease. It did not say that the Government could give the lessor a written notice of cancellation “on or after February 7,1964,” but, rather, that the Government could “cancel this lease in whole or part, effective on or after February 7, 1964,” subject .to the requirement that the Government must give the lessor written notice of the cancellation 60 days in advance.
Consequently, the validity of the cancellation notice was not affected by the circumstance that it was sent to the plaintiff prior to February 7,1964, since it related to a cancellation that was to be effective “on or after February 7, 1964” and more than 60 days after the date of the notice.
In its brief to the commissioner, the plaintiff makes a further contention to the effect that “the provision of the lease giving the tenant the right to cancel after the expiration date of the original term is void for lack of mutuality of obligation.” With respect to this point, the lease between the plaintiff and the defendant must be viewed in its entirety. The lease conferred several rights on the defendant, e.g., the right to occupy the leased premises for a 1-year period from February 8, 1963 to February 7, 1964, the right to renew the lease from year to year, and the right to cancel the lease effective on or after February 7,1964, upon giving the plaintiff 60 days’ written notice in advance. For all these rights, the defendant gave the plaintiff as consideration a promise to pay — and subsequently the actual payment of — the sum of $5,885.40 as rental for the 1-year period from February 8, *508 1963 to February 7, 1964, plus further rental at the same annual rate for any time that the defendant continued to occupy the leased premises under an extension of the lease beyond the firm term of one year. This consideration was as applicable to the defendant’s right to cancel the lease effective on or after February 7,1964, as it was to the defendant’s right to occupy the leased premises during the existence of the lease.
We are dealing here with a provision in a lease between the plaintiff and the defendant which states that “The Government hereby reserves the right to cancel this lease in whole or part effective on or after February 7, 1964, upon sixty (60) days’ written notice to the Lessor * * In another provision of the lease (paragraph 5), the Government was given the right to renew the lease from year to year for two additional years at the same annual rental of $5,885.40. In the event of an extension of the term of the lease beyond the original 1-year period for which the Government made a firm commitment, the Government obviously wished to have the right, and the plaintiff agreed that the Government might have the right, to cancel the lease effective at any time during the extended term, upon 60 days’ written notice in advance.
The original 1-year term of the lease was extended, and the Government (for reasons that were not explained at the trial) exercised the right which it had reserved to cancel the extended term upon 60 days’ written notice in advance. The circumstance that the extension of the term of the lease lasted for only one month before the cancellation of the lease became effective might seem a bit unusual, but it did not affect the validity of the cancellation.
The plaintiff contends that the renewal of the lease extended the cancellation date to on or after the end of the new term (February 8, 1965) and that defendant could not cancel it until after that date. According to such an argument, if defendant renewed the lease a second time, the cancellation date would be extended to on or after February 8, 1966, the maximum period of the lease, and defendant would never have the right to cancel it. In other words, the cancellation clause would be meaningless and could in fact never become operative. This was not the intention of the parties. Their *509 intent was clearly shown by the telegram sent by defendant to plaintiff on January 25,1963, before the lease was signed, which is quoted in finding 5. It was made clear in this telegram that there was to be a firm non-cancellable lease for a period of one year, and, if it was renewed, defendant was to have the right to cancel it at any time during the renewed period by giving the sixty days notice. The parties endeavored to so provide in the lease.
The action of the parties at the time defendant cancelled the lease is consistent with this view. When plaintiff received the cancellation notice from defendant, it sent defendant a letter demanding restoration of the premises and stating “* * * we are required to give you a minimum 30 days notice before termination of the lease.” This was in effect a recognition by plaintiff that defendant had cancelled the lease as of March 7,1964 in accordance with its cancellation provisions. The interpretation given to a lease by the acts and conduct of the parties is highly persuasive as to its meaning. Olin Mathieson Chemical Corp. v. United States, 179 Ct. Cl. 368, 392 (1967).

Second Cowrit

Negotiations leading up to the signing of lease No. GS-04B-8679 were 'begun late in 1962 or early in 1963. The defendant desired to procure some office space in Miami for use as a civil service examination room. The negotiations were conducted on behalf of the defendant by William H. Capes, an employee of the defendant’s General Services Administration then stationed in Miami, and by the plaintiff’s president.
Mr. Capes explained the purpose for which the defendant desired to obtain office space, and indicated that an open area (except for building columns) containing approximately 1,800 square feet was desired. At the time, the plaintiff had 1,731 square feet of vacant office space in rooms 610-617 on the sixth floor of its building, but the conversion of these rooms into open office space would require extensive work through the removal of partitions, doors, and transoms, the relocation of light fixtures, and some alteration of outlets for the air-conditioning system. The plaintiff’s president was *510 concerned over tbe cost of making tbe necessary alterations, especially if tbe parties should enter into a short-term lease and tbe defendant should then vacate tbe premises at the end of tbe period.
The plaintiff’s president proposed that tbe parties enter into a lease for a firm 3-year term in order that tbe plaintiff might amortize the cost of tbe prospective alterations. In the alternative, the plaintiff’s president proposed that if tbe lease were to permit tbe Government to vacate tbe premises within a shorter period than three years, tbe lease should also contain a provision for tbe payment by the defendant to the plaintiff of a fixed amount (the sum of $1,500 was suggested by the plaintiff’s president) to cover the cost of restoring the premises to the condition existing as of the time of the negotiations.
Mr. Capes indicated to the plaintiff’s president that the defendant would be unwilling to enter into a lease for a firm 3-year term. Mr. Capes further informed the plaintiff’s president that he was not authorized to include a restoration provision of the sort desired by the plaintiff’s president, calling for the payment of a fixed amount to cover the cost of restoration, but that the lease would contain the standard restoration provision.
Under the date of January 24,1963, the plaintiff’s president addressed to Mr. Capes a communication offering to lease the 1,731 square feet of office space to the defendant. The letter stated in part as follows:
Based on our conversation regarding the adapting of this space for a civil service examination room, 94 linea] feet of interior hallway will have to be removed including doors already in, and 92 lineal feet of interior walls wifi, have to be removed including doorways already in.
The removal of these walls wifi convert this area into a large open space approximately 37x47 feet.
A part of. the lease arrangement will have to include the restoration of the walls and doors mentioned above, upon expiration of the lease.
On a one year lease basis, this area would rent as described above at $3.40 per square foot.
On a two year lease basis, this area would rent as described above for $3.25 per square foot. [Emphasis supplied.]
*511 On January 25, 1963, Mr. Capes sent the plaintiff a telegram accepting the plaintiff’s offer to lease 1,731 square feet of office space at an annual rental of $3.40 per square foot. The telegram concluded with the following language:
* * * FIRM TERM OF LEASE WILL BE FOR ONE YEAR, BEGINNING NOT LATER THAN DELIVERY DATE WITH OPTIONS TO RENEW FOR TWO ADDITIONAL YEARS WITH CANCELLATION ON SIXTY DAYS NOTICE, EFFECTIVE ON OR AFTER TERMINATION DATE OF INITIAL ONE YEAR PERIOD. LEASE AGREEMENT INCLUDING STATEMENT ON RESTORATION AND NON-DISCRIMINATION IN FACILITIES CLAUSE WILL FOLLOW IN FEW DAYS.
A formal written lease was prepared by personnel of the defendant and was submitted to the plaintiff’s president for signature. This lease was prepared on a printed form, U.S. Standard Form No. 2 (Revised), with typed material being inserted in appropriate blank spaces. One of the standard provisions contained in the printed form was paragraph 8, dealing with the subject 'of the restoration of the premises. This was the standard restoration provision previously mentioned by Mr. Capes in his negotiations with the plaintiff’s president, and it provided as follows:
8. The Government shall have the right, during the existence of this lease, to make alterations, attach fixtures, and erect additions, structures, or signs, in or upon the premises hereby leased (provided such alterations, additions, structures, or signs shall not be detrimental to or inconsistent with the rights granted to other tenants on the property or in the building in which said premises are located); which fixtures, additions, or structures so placed in or upon or attached to the said premises shall be and remain the property of the Government and may be removed therefrom by the Government prior to the termination of this lease, 'and the Government, if required by the Lessor, shall, before the expiration of this lease or renewal thereof, restore the premises to the same condition as that existing at the time of entering upon the same under this lease, reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the Government has no control, excepted : Provided, however, that if the Lessor requires such restoration, the Lessor shall give written notice *512 thereof to the Government thirty (30) days before the termination of the lease.
The plaintiff’s president read the lease before signing it.
As indicated in another portion of this opinion, the formal written lease was entered into by the parties as of January 31,1963, but it was not signed until after April 8,1963, and the defendant first occupied the premises on or about February 8,1963.
All the alterations necessary in order to convert rooms 610-617 into open office space that could be used for a civil service examination room were 'accomplished by the plaintiff prior to the date of occupancy by the defendant, at no expense to the defendant.
The defendant continued to occupy the leased premises until March 7, 1964, on which date the defendant vacated the premises pursuant to the cancellation notice previously discussed.
During the period of the defendant’s occupancy, the defendant did not make any alterations in the leased premises.
The plaintiff requested that the defendant either restore the vacated premises to the condition existing as of the time of the negotiation of lease No. GS-04B-8679, or defray the cost of such restoration. The defendant refused to do so.
The plaintiff, through a local contractor, restored rooms 610-617 in its building substantially to the condition that existed as of the time of the negotiation of lease No. GS-04B-8679. The restoration work was performed in October 1965 at a cost to the plaintiff of $11,207. This was a reasonable charge in Dade Oounty, Florida, for construction work of the type involved here.
In the second count of the petition, the plaintiff contends that the defendant is contractually obligated, by virtue of the negotiations between the plaintiff’s president and William H. Capes that antedated the signing of the lease, to bear the cost of restoring the leased premises to their former condition.
The plaintiff contends that its president gained the impression, in his discussion with Mr. Capes regarding the subject of the restoration of the property, that the lease would contain a provision whereby the Government, if it occupied the *513 premises for a shorter period than three years, would defray the cost of restoring the premises to the condition existing as of the time of the negotiation of the lease. However, the evidence shows that although the lease was dated January 31, 1963, it was not signed by either party until after April 8,1963. In the meantime, on April 8,1963, Mr. Capes phoned plaintiff’s president and told him that on advice of its regional counsel the defendant could not agree to insert a provision in the lease requiring defendant to pay for the restoration of the premises upon the termination of the lease. He stated further that the lease would contain standard paragraph 8 which is found in standard form 2 which covers restoration. Plaintiff’s president received the lease and after reading it, signed it with full knowledge of its contents. It was prepared on U.S. standard form No. 2 and contained standard paragraph 8 as represented by Mr. Capes.
It will be noted from a reading of paragraph 8 of lease No. GS-04B-8679 that the Government’s commitment to “restore the premises to the same condition as that existing at the time of entering upon the same under this lease” was part of a sentence giving the Government the right, during the existence of the lease, to make alterations in the premises. Hence, it is clear from the syntax that the Government’s obligation to restore related only to any alterations that it might make in the premises during the period of the Government’s occupancy.
Since the Government did not make any alterations in the premises, and the premises were in the same condition when the Government vacated them “as that existing at the time of entering upon the same under this lease,” no restoration obligation was imposed on the Government by paragraph 8 of the lease.
Furthermore, it perhaps should be mentioned that Mr. Capes, at the time when he was orally negotiating with the plaintiff’s president for the lease of office space, was only authorized to contract under his own authority for office space if the amount of the rental for the firm term of a lease was $2,500 or less. Any proposed arrangements made by Mr. Capes for the lease of office space involving a rental in excess of $2,500 for the firm term of a lease were subject to review *514 and approval or disapproval by higher authority in the General Services Administration. Since the minimum amount of the rental for the plaintiff’s office space was to be in excess of $2,500, Mr. Capes did not have the authority to enter into a binding agreement with the plaintiff’s president for the inclusion in the lease of a provision requiring the Government to defray the cost of restoring the premises to the condition existing as of the time of the negotiations.
Considerations of public policy have led courts to adhere to the rule that a person negotiating with an officer or agent of the Government must inform himself regarding the authority of such individual, since an officer or agent of the Government cannot bind the Government with respect to matters beyond the limit of his authority. Wilber National Bank v. United States, 294 U.S. 120, 128-124 (1935); Vogt Brothers Manufacturing Co. v. United States, 180 Ct. Cl. 687, 693 (1963); Bornstein v. United States, 170 Ct. Cl. 576, 582, 345 F. 2d 558, 562 (1965).

Conclusion

For the reasons indicated in the previous portions of this opinion, the plaintiff is not entitled to recover either on the first count or on the second count of the petition, and the petition should be dismissed.
Although one may sympathize with the plaintiff because this contract with the Government turned out to have been entered into improvidently, this is not a legal basis on which recovery can be allowed.
FINDINGS of Fact
1. This action was instituted on September 19, 1964 to recover damages for an alleged breach by the defendant of a lease contract between the plaintiff and the defendant.
2. (a) The plaintiff, Miami Metropolitan Building Corporation, operates a major downtown office building located at 117 N.E. First Avenue, Miami, Florida. At the time involved in the present litigation, the building was known as the Metropolitan Bank Building.
(b) The plaintiff leases space in its building to commercial tenants.
*515 (c) From time to time, the plaintiff has entered into leases of commercial office space with the defendant.
3. (a) Late in 1962 or early in 1963, the defendant desired to procure some office space in Miami, Florida, for use as a civil service examination room. Negotiations were undertaken by William H. Capes, an employee of the defendant’s General Services Administration then stationed in Miami, with the plaintiff’s president concerning the procurement of the desired office space in the plaintiff’s building. Mr. Capes had authority at the time of the oral negotiations to contract on behalf of the defendant for office space if the amount of the rental for the firm term of the lease was $2,500 or less. Any proposed arrangements made by Mr. Capes for the lease of office space involving a rental in excess of $2,500 for the firm term of the lease were subject to review and approval or disapproval by higher authority in the General Services Administration.
(b) Mr. Capes explained the purpose for which the defendant desired to obtain office space, and 'indicated that an open area (except for building columns) containing approximately 1,800 square feet was desired. At the time, the plaintiff had 1,731 square feet of vacant office space in rooms 610-617 on the sixth floor of its building, but the conversion of these rooms into open office space would require extensive work through the removal of partitions, doors, and transoms, the relocation of light fixtures, and some alteration of outlets for the air-conditioning system. The plaintiff’s president was concerned over the cost of making the necessary alterations, especially if the parties should enter into a short-term lease and the defendant should then vacate the premises at the end of the lease period.
(c) The plaintiff’s president proposed that the parties enter into a lease for a firm 3-year term in order that the plaintiff might amortize the cost of the prospective alterations. In the alternative, the plaintiff’s president proposed that if the lease were to permit the Government to vacate the premises within a shorter period than 3 years, the lease should also contain a provision for the payment by the defendant to the plaintiff of a fixed amount (the plaintiff’s president suggested $1,500) to cover the cost of restoring the *516 premises to the condition, existing as of the time of the negotiations.
(d) Mr. Capes indicated to the plaintiff’s president that the defendant would be unwilling to enter into a lease for a firm 3-year term. Mr. Capes further informed the plaintiff’s president that he was not authorized to include a restoration provision of the sort desired by the plaintiff’s president, calling for the payment of a fixed amount to cover the cost of restoration, 'but that the lease would contain the standard restoration provision.
4. Under the date of January 24,1963, the plaintiff’s president addressed to William Capes, General Services Administration, Miami, Florida, a communication stating in part as follows:
We are pleased to offer you the following space in the Metropolitan Bank Building:
The 6th floor, from Booms 610 thru 617, a total of 1,731 square feet.
. This space will be furnished with lighting, asphalt tile floors, painted, and air-conditioning, including all utilities and janitorial service.
Based on our conversation regarding the adapting of this space for a civil service examination room, 94 lineal feet of interior hallway will have to be removed including doors already in, and 92 lineal feet of interior walls ■will have to be removed including doorways already in.
The removal of these walls will convert this area into a large open space approximately 37x47 feet.
A part of the lease arrangement will have to include the restoration of the walls and doors mentioned above, upon expiration of the lease.
On a one year lease basis, this area would rent as described above at $3.40 per square foot.
On. a two year lease basis, this area would rent as described above for $3.25 per square foot.
5. On January 25,1963, W. H. Capes sent to the plaintiff a telegram stating as follows:
THE GOVEBNMENT HEKEBY ACCEPTS YOUB OFFEB, HATED JANUABY 24 1963 TO LEASE 1731 SQ. FT. OF MODEBN NET USABLE AIBCONDITIONED CONTINGUOUS [sic] SPACE CONSISTING OF BOOMS 610 THBOUGH 617 METBOPOLITAN BANK BLDG., 117 N.E. FIBST AVENUE, MIAMI FLOBIDA — AT AN ANNUAL *517 RENTAL OF $3.40 PER SQ. FT., WHICH INCLUDES ALL UTILITIES, SERVICES, AND FACILITIES. IT IS FURTHER AGREED THAT YOU WILL ADAPT THE SPACE INTO ONE LARGE OPEN AREA FOR DELIVERY NOT LATER THAN FEBRUARY 8 1963. HOWEVER, GOVERNMENT WILL MOVE IN AND ACCEPT SPACE IF YOU CAN COMPLETE SAME PRIOR TO THAT TIME. FIRM TERM OF LEASE WILL BE FOR ONE YEAR, BEGINNING NOT LATER THAN DELIVERY DATE WITH OPTIONS TO RENEW FOR TWO ADDITIONAL YEARS WITH CANCELLATION ON SIXTY DAYS NOTICE, EFFECTIVE ON OR AFTER TERMINATION DATE OF INITIAL ONE YEAR PERIOD. LEASE AGREEMENT INCLUDING STATEMENT ON RESTORATION AND NON-DISCRIMINATION IN FACILITIES CLAUSE WILL FOLLOW IN FEW DAYS.
6. (a) On April 8, 1963, Mr. Capes phoned plaintiff’s president and told him that on advice of defendant’s regional counsel it could not agree to insert a provision in the lease that would require the defendant to restore the premises at the end of the lease. However, he stated that the lease would contain standard paragraph 8 in standard form 2 covering restoration. Both parties fully understood what the lease would contain in this regard when it was signed by them at a later date.
(b) A formal written lease was prepared by personnel of the defendant and was submitted to the plaintiff’s president for signature. This lease was prepared on a printed form, U.S. Standard Form No. 2 (Revised), with typed material being inserted in appropriate blank spaces. One of the standard provisions contained in the printed form was paragraph 8, dealing with the subject of the restoration of the premises. This was the standard restoration provision previously mentioned by Mr. Capes in his negotiations with the plaintiff’s president.
(c) The plaintiff’s president read and signed the proposed contract. It was also signed on behalf of the defendant by a duly authorized official. It was dated January 31,1963, but was not signed until after April 8,1963.
*518 7. The formal written lease was numbered GS-04B-8679. Under the terms of the lease, the defendant agreed to rent certain office space from the plaintiff. The lease term was from February 8, 1963 to February 7, 1964, with an option in the defendant to renew annually upon 30 days’ written notice, up to February 7, 1966. The amount of the annual rental under the lease was $5,885.40.
8. Lease No. GS-04B-8679 contained the following paragraphs (among others) :
5. This lease may, at the option of the Government, be renewed from year to year at a rental of Five Thousand, Eight Hundred, Eighty Five Dollars, Forty Cents ($5,885.40) per annum and otherwise upon the terms and conditions herein specified, provided notice be given in writing to the Lessor at least thirty (30) days before this lease or any renewal thereof would otherwise expire : Provided that no renewal thereof shall extend the period of occupancy of the premises beyond the 7th day of February, 1966.
*****
8. The Government shall have the right, during the existence of this lease, to make alterations, attach fixtures, and erect additions, structures, or signs, in or upon the premises hereby leased (provided such alterations, additions, structures, or signs shall not be detrimental to or inconsistent with the rights granted to other tenants on the property or in the 'building in which said premises are located); which fixtures, additions, or structures so placed in or upon or attached to the said premises shall be and remain the property of the Government and may be removed therefrom by the Government prior to the termination of this lease, and the Government, if required by the Lessor, shall, before the expiration of this lease or renewal thereof, restore the premises to the same condition as that existing at the time of entering upon the same under this lease, reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the Government has no control, excepted : Provided, however, that if the Lessor requires such restoration, the Lessor shall give written notice thereof to the Government thirty (30) days before the termination of the lease.
*****
13. The Government hereby reserves the right to cancel this lease in whole or part, effective on or after Feb *519 ruary 7,1964, upon sixty (60) days’ written notice to the Lessor, such notice to be computed from the date of mailing, and no rental shall accrue after the effective date of termination.
*****
2Q '!>•!’$
*****
(a) The lessor shall accomplish the necessary alterations prior to the date of occupancy at no expense to the Government.
9. The defendant’s occupancy of the leased premises began on or about February 8,1963.
10. All necessary alterations to the leased premises were accomplished by the plaintiff prior to the date of occupancy, at no expense to the defendant.
11. Under the date of December 23,1963, a representative of the defendant sent to the plaintiff a renewal notice relative to lease ISTo. GS-04B-8679. The notice stated as follows:
Notice is hereby given, in accordance with the terms of the subject lease, that the United States of America the 23rd day of December 1963, elects to renew said lease (and all operative supplements thereto), and by these presents does renew, extend, and adopt the said lease in all its terms and conditions for the period beginning February 8,1964, and ending February 7,1965.
12.Under the date of January 3,1964, the following communication was sent by a representative of the defendant to the plaintiff:
Reference is made to Lease Number GS-04B-8679 dated January 31, 1963 covering approximately 1,731 square feet of space contained in Rooms 610 through 617 of the Metropolitan Bant Building located at 117 N.E. First Avenue, Miami, Florida.
The Government hereby cancels said lease, effective midnight, March 7,1964.
This notice is given in conformance with the sixty days’ notice required under the terms of the lease.
13.Under the date of Januaiy 9,1964, the plaintiff’s president sent the following letter to the defendant:
Under the terms of the above lease, page 2, paragraph 8, we will require the restoration of the premises occupied by the Civil Service examinating [sic] room offices, as they were at the time the lease was entered into. *520 Under this paragraph we are required to give you a miuirmim 30 days notice before termination of the lease.
Please consider this notice of desire for restoration under the terms of the lease, and we will be pleased to forward you our contractors estimate of costs at such time as you require. .
. We would appreciate your reply to the above at your earliest convenience.
14. (a) Under the date of February 26, 1964, the plaintiff’s president sent the following letter to the defendant:
Enclosed you will find three bids for restoration work on the sixth floor rear Metropolitan Bank Building..
These are all outside bids. I believe that the building itself can accomplish this work for somewhat less but have not included our cost of so doing because I wasn’t sure that it was permitted.
Please ’advise us as to whether it is, and in what form you would like to have the Building Corporation’s own estimate of restoration if they perform the work.
Your earliest response to the above would be appreciated.
(b) One of the estimates accompanying the letter of February 26, 1964 was prepared by the Art Construction Company, which had previously done repair work for the plaintiff in its building. This estimate for the restoration of rooms 610-617 substantially to the condition that existed as of the time of the negotiation of lease GrS-04B-8679 was in the amount of $11,207.
15. The defendant vacated the premises and ceased to pay rent on March 7,1964.
16. The defendant occupied the leased premises pursuant to the provisions of lease No. GrS-04B-8679 and paid the agreed rentals through and including March 7,1964.
17. The defendant made no alterations in the leased premises.
18. (a) The plaintiff engaged the Art Construction Company to restore rooms 610-617 substantially to the condition that existed as of the time of the negotiation of lease No. GS-04B-8679. The restoration work was performed in October 1965 at a cost to the plaintiff of $11,207.[1]
*521 (b) The figure of $11,207 mentioned in paragraph (a) of this finding was a reasonable charge for construction work in Dade County, Florida, of the type involved here.
19. The defendant denied the plaintiff’s claim that the defendant should restore the leased premises to the condition existing as of the time of the negotiation of lease GS-04B-8679, or, in the alternative, that the defendant should defray the cost of accomplishing such restoration.
20. (a) Eooms 610-617 in the plaintiff’s building remained vacant throughout the period beginning March 8, 1964 and extending through February 7,1965.
(b) The amount of the rental under lease No. GS-04B-8679 for the period beginning March 8, 1964 and extending through February 7, 1965 would have been $5,894.95.
CONCLUSION of Law
Upon the foregoing findings of fact and opinion, which are adopted by the court 'and made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and the petition is dismissed.

The- opinion, findings of fact, and recommended conclusion of law are submitted under tie order of reference and Eule 57 (a).

 The total amount of tlie Art Construction Company's bill to the plaintiff was $13.179.9'6, but it included some work that was unrelated to rooms 6C10-617.