JOHN J. GARLAND AND LOIS GARLAND, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Garland v. Commissioner
Docket No. 14136-89
United States Tax Court
T.C. Memo 1993-190; 1993 Tax Ct. Memo LEXIS 193; 65 T.C.M. (CCH) 2532; April 28, 1993, Filed *193 Decision will be entered under Rule 155. For petitioners: Oscar Nipper and Donn A. Joers. For respondent: Marilyn S. Ames and Susan M. Pinner. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined a $ 91,784 deficiency in petitioners' Federal income tax for 1985 and additions to tax of $ 4,589 for negligence under section 6653(a)(1), 50 percent of the interest due on $ 91,784 for negligence under section 6653(a)(2), and $ 22,946 for substantial understatement of income tax under section 6661. After concessions, the issues remaining to be decided are: 1. Whether petitioners properly elected to carry forward net operating losses. We hold that they did not. 2. Whether petitioners are entitled to a $ 64,231 investment tax credit carryforward to 1985 from 1978, 1979, 1980, and 1981. We hold that they are not. 3. Whether respondent is equitably estopped from challenging petitioners' return because Internal Revenue Service (IRS) agents approved it. We hold that respondent is not. Respondent concedes the additions to tax under section 6653(a) for negligence and section 6661 for substantial understatement of income tax. All references to *194 petitioner in the singular are to John J. Garland. All Rule references are to the Tax Court Rules of Practice and Procedure and all section references are to the Internal Revenue Code in effect for the year at issue. Some of the facts are stipulated and are so found. FINDINGS OF FACT 1. Petitioners
Petitioners resided in Cleveland, Texas, when they filed the petition in this case. They were married to each other during the years in issue and when they filed the petition in this case. Petitioner operated J.J. Garland Trucking, a trucking and logging sole proprietorship, after he got out of the Army in 1945, including during the year in issue. Mrs. Garland was a homemaker and a full-time bookkeeper, secretary, treasurer, representative, and driver for the business. Petitioners did not keep a formal set of books for their business. They kept checks, check stubs, contracts, and receipts for payments. An accountant did not look at their records before 1982. Petitioners had been nonfilers since the late 1940s. In 1982, Patrick Shirey, a revenue officer for respondent, contacted petitioners to encourage them to file their returns. His primary duties were to secure delinquent *195 tax returns and collect taxes. Shirey left his business card in petitioners' door once when they were not at home. The card stated that he was a revenue officer. Petitioners retained Oscar Nipper (Nipper), a tax attorney and certified public accountant (C.P.A.), to represent them in this matter before they contacted Shirey. Nipper assigned their case to Geoffrey Clark, a C.P.A. employed by Nipper. About 80 percent of Clark's practice involved tax return preparation. Nipper told Clark they had 2 weeks to prepare petitioners' 1979, 1980, and 1981 returns. Clark telephoned Shirey and told him that it would take at least a month to prepare the returns. Shirey told Clark that would be okay. Shirey did not discuss his authority to approve tax returns during that call. Clark prepared petitioners' 1981 return first, and then their 1979 and 1980 returns. Petitioners filed their 1977, 1978, 1979, 1980, and 1981 returns from July 19 to September 7, 1982. Petitioners claimed net operating losses as follows: Year
Amount of loss
Use of loss
1977
$ 77,561
Carried forward to 1982
1978
2,229
Carried forward to 1982
1979
39,939
Carried forward to 1980
1980
15,818
Carried back to 1978
1981
13,267
Carried back to 1978
1982
87,108
Carried forward to 1983
1983
121,613
Carried forward to 1984
1984
36,202
Carried forward to 1985 [1]
*196 Petitioners did not otherwise indicate an election on any returns to carry the net operating losses forward without first carrying them back. Petitioners claimed an investment tax credit on their 1985 return, based in part on their investment tax credit carryforwards from the following years: 1978
$ 7,431
1979
12,349
1980
8,120
1981
25,198
1982
5,324
1984
5,809
Petitioners did not carry back any of the net operating losses or investment tax credits before carrying them forward. Clark prepared and filed the returns and delivered copies to Shirey. After he delivered two or three of them, he asked Shirey if they were going in the right direction and Shirey said that he would contact Clark if there was a problem. Petitioners did not file income tax returns for 1974 through 1976. Respondent did not audit petitioners for 1977 through 1984, and did not challenge *197 petitioners' treatment of excess net operating losses and investment tax credits for those years. Petitioners did not contact Shirey directly. Clark communicated with Shirey on petitioners' behalf. Petitioner's only personal contact with Shirey occurred when Shirey came to petitioners' house looking for another person. Petitioner asked Shirey how petitioners' case was coming along and Shirey responded that it was fine. Shirey told petitioner, "You are in good shape". The conversation lasted a few minutes. Petitioner was in his yard and Shirey was in his car during the conversation. Petitioners hired Nipper and Clark to prepare their 1985 return. They delivered their books and records to Clark. Clark indicated on the 1985 return the years from which net operating losses and investment tax credits were carried after consulting Nipper. Gladys Kruger, a revenue agent for respondent, called petitioner in 1987 to tell him that she was going to audit petitioners' 1985 return. She did not ask to see any books and records. Ms. Kruger did not tell petitioners whether she believed their 1985 return was correct. Clark telephoned petitioners and told them that respondent was going *198 to make adjustments to their 1985 return. Clark was familiar with IRS audit practice, including the issuance of no-change letters. Petitioners did not receive any no-change letters for 1977 through 1981. Clark was also familiar with closing agreements under section 7121, and had handled several of them for clients. He knew that a closing agreement is the only way the Commissioner can formally agree to be bound. Petitioners did not execute any closing agreements with respondent. Clark did not know the difference between a revenue agent and a revenue officer when the audit of petitioners began. He did not know what Shirey's authority was. OPINION 1. Election to Waive Carryback Period for Net Operating Losses
The parties agree that petitioners incurred operating losses in stipulated amounts. The only issue for us to decide with respect to net operating losses is whether petitioners must carry back the stipulated amounts of net operating losses to preceding taxable years before any portion may be carried forward to 1985. [1]
*199 A taxpayer may carry back a net operating loss to the 3 years before the loss year, and then forward to the 15 years after the loss year. Sec. 172(b)(1). A taxpayer may elect to forgo the carryback. Sec. 172(b)(3)(C). The election must be made by the due date, including extensions, for filing the taxpayer's return for the year the net operating loss arose for which the election is to be in effect. Sec. 172(b)(3)(C). The Secretary is authorized to prescribe the manner for making the election. Sec. 172(b)(3)(C). The Secretary prescribed the manner for making the election in section 7.0(d), Temporary Income Tax Regs., 42 Fed. Reg. 1470 (Jan. 7, 1977), 1977-1 C.B. 587, 590. [2] It provides in pertinent part: (d) Manner of making election. Unless otherwise provided in the return or in a form accompanying a return for the taxable year, the elections described * * * shall be made by a statement attached to the return (or amended return) for the taxable year. The statement required when making an election pursuant to this section shall indicate the section under which the election is being made and shall set forth information to identify *200 the election, the period for which it applies, and the taxpayer's basis or entitlement for making the election.
Petitioners argue that section 7.0(d), Temporary Income Tax Regs., is invalid because it is unreasonable and plainly inconsistent with the revenue statutes or fails to implement the statutory provisions in a reasonable manner. Petitioners do not state which section of the Internal Revenue Code conflicts with the regulation, but we believe them to assert that section 7.0(d), Temporary Income Tax Regs., is inconsistent with section 172. [3] Petitioners assert that the election to relinquish the carryback period should be allowed to be made on the return. Petitioners point to examples of other elections *201 that are allowed to be made on a return or IRS forms, but offer no authority that they need not comply with the applicable regulation. Petitioners argue that they substantially complied with section 7.0(d), Temporary Income Tax Regs., as suggested in Young v. Commissioner, 83 T.C. 831, 835-838 (1984), affd. 783 F.2d 1201, 1206 (5th Cir. 1986), because the essence of the statute is that a taxpayer unequivocally *202 communicate his election to bind himself to the use of his net operating loss. Petitioners noted the amount of the net operating loss carryforward and the year from which it was being carried on their Schedule C forms for 1977 through 1984. This is even less than the taxpayers did in Young, where the Court of Appeals for the Fifth Circuit held that a taxpayer's entry of a net operating loss carryforward on line 11 of Form 4625 attached to the tax return did not literally or substantially comply with the statutory election requirement. The Form 4625 was at least "contemporaneous" in that it was attached to the return for the year in which the loss was incurred. Young v. Commissioner, 783 F.2d at 1203-1205. Here there were no Forms 4625. The returns for the years in which the losses were incurred had nothing to indicate a waiver of the carryback. Indeed, the returns for 1977 through 1981 (and possibly other years) were filed late, so even if they had contained an election (which they did not), it would have been ineffective. See sec. 172(b)(3)(C); Young v. Commissioner, 783 F.2d at 1207. Thus, Young supports *203 respondent rather than petitioners. We are not convinced that section 7.0(d), Temporary Income Tax Regs., is inconsistent with section 172. We are not convinced that petitioners either literally or substantially complied with the statutory election requirement. Accordingly, we hold that petitioners must carry back their net operating losses before any portion of them may be carried forward. 2. Equitable Estoppel Against the Government
Petitioners argue that respondent is equitably estopped from asserting the deficiencies because Shirey led them to believe that their returns were proper. The parties agree that petitioners have unused investment tax credits from 1977 through 1982 and 1984. Petitioners assert that their equitable estoppel theory applies to net operating losses and investment tax credits. "Equitable estoppel is a judicial doctrine that precludes a party from denying his acts or representations which induced another to act to his detriment." Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992). Petitioners cite a number of cases to support their position. E.g., Heckler v. Community Health Services, 467 U.S. 51 (1984); *204 Schuster v. Commissioner, 312 F.2d 311 (9th Cir. 1962), affg. 32 T.C. 998 (1959). However, these cases are distinguishable and do not convince us that respondent should be estopped in this case. Generally, equitable estoppel may not be applied against the Government when it acts in a sovereign capacity. United States v. Florida, 482 F.2d 205, 209 (5th Cir. 1973). To invoke estoppel against the Government, the party seeking estoppel must show at a minimum: (1) The existence of a false representation or wrongful misleading silence by the other party; (2) ignorance of the facts; (3) reasonable reliance on the false representation or wrongful misleading silence of the other party; (4) error in a statement of facts and not in an opinion or statement of law; and (5) a resulting detriment to the party relying on the false statement or misleading silence. Kronish v. Commissioner, 90 T.C. 684, 695 and n.10 (1988); Estate of Emerson v. Commissioner, 67 T.C. 612, 617-618 (1977); see Keado v. United States, 853 F.2d 1209, 1217-1218 (5th Cir. 1988); *205 Moody v. United States, 783 F.2d 1244, 1246 (5th Cir. 1986). The burden of proof is on the party claiming estoppel. Rule 142(a); Hofstetter v. Commissioner, supra at 701. Petitioners have not proven any of the elements of equitable estoppel. First, we do not find that Shirey made false representations to petitioner or petitioners' agents that their election to waive carryback years was correct. There is no evidence that Shirey knew that petitioners' treatment of the net operating loss carryforwards and investment tax credit carryforwards was incorrect. Petitioner testified that he asked Shirey how petitioner's case was coming along in a passing conversation. Shirey said that it was coming along fine. Clark testified that Shirey said that petitioners were in good shape. Clark testified that Shirey responded positively to the question of whether petitioners were headed in the right direction. Both petitioner and Clark admitted that Shirey said nothing about the correctness of the returns. It is more likely that Shirey's comments concerned the filing of delinquent returns and not the correctness of those returns. *206 Thus, we are not convinced that Shirey made a false representation. There is no evidence that any other of respondent's agents made a false representation. Second, although petitioners did not personally have knowledge of the facts, their accountants and attorneys did or should have. Clark testified that he was familiar with respondent's audit practices and closing agreements. Nipper was also an experienced C.P.A. and tax attorney. Third, petitioners have failed to prove that their alleged reliance on respondent's agent's representations was reasonable. Petitioners were represented by accountants and lawyers throughout the handling of this matter. We are not convinced that two experienced C.P.A.'s, one of them also a tax attorney, reasonably relied on Shirey's vague statements about a return to conclude that the returns were correct as to the treatment of petitioners' net operating losses and unused investment tax credits. We conclude that petitioners did not prove reasonable reliance on any of respondent's agents. Fourth, petitioners have not proven that there was an error in a statement of facts. Petitioners argue that Shirey erroneously led them to believe that their *207 returns, including net operating loss treatment, were correct. As discussed above, Shirey's statement was not false. If we assume that Shirey said that petitioners' returns were correct, his statement, at most, could be a representation of an issue of law and not an issue of fact. Equitable estoppel does not bar the Commissioner from correcting a mistake of law, Automobile Club v. Commissioner, 353 U.S. 180, 183-184 (1957), "even where a taxpayer may have relied to his detriment on the Commissioner's mistake." Dixon v. United States, 381 U.S. 68, 72-73 (1965). Fifth, we do not find any detriment suffered by petitioners to be the result of any false misrepresentation or wrongful, misleading silence. Rather, petitioners' predicament is the result of failing to comply with the law. We note that Shirey did not intend for his statement to be acted on in the manner claimed by petitioners. Shirey did not have authority to bind respondent as to the correctness of the returns. See United States v. Stewart, 311 U.S. 60, 70 (1940); Bornstein v. United States, 170 Ct. Cl. 576, 582, 345 F.2d 558, 562-563 (1965); *208 Wilkinson v. United States, 157 Ct. Cl. 847, 859, 304 F.2d 469, 474-475 (1962). We conclude that petitioners are not entitled to equitable estoppel relief. Petitioners argue that quasi-estoppel or the duty of consistency estops the Government. Petitioners rely on Conway Import Co. v. United States, 311 F. Supp. 5, 14-15 (E.D.N.Y. 1969). In Conway, the court said: "Apart from the doctrine of estoppel, there is a duty of consistency and fair dealing on the part of the Commissioner". Id. at 14. Conway is distinguishable. In Conway, the court concluded that a recordkeeping system that has been substantially accepted for a long period of time, after careful review by many of the Commissioner's agents at different levels of authority, should not be changed except on timely notice, which should be prospective in its application. Id. This situation is not present here. Thus, we are not convinced that quasi-estoppel applies. To reflect concessions and the foregoing, Decision will be entered under Rule 155. Footnotes
1. Petitioenrs claimed $ 36,202 on their Schedule C as a net operating loss carryforward from 1983 but the carryforward was actually from 1984.↩
1. Petitioners agree that sec. 46(b)(1) requires unused investment tax credits to be carried back 3 years before being carried forward. Thus, petitioners do not argue that they may elect to waive the carryback requirement for investment tax credits. Rather, they rely on an equitable estoppel theory which is discussed below.↩
2. Until final regulations are issued, temporary regulations are entitled to weight comparable to that of final regulations. Nissho Iwai Am. Corp. v. Commissioner, 89 T.C. 765, 776 (1987); see Zinniel v. Commissioner, 89 T.C. 357, 369↩ (1987).
3. See Carlstedt Associates, Inc. v. Commissioner, T.C. Memo. 1989-27, n.16 (taxpayer alleged sec. 7.0(d), Temporary Income Tax Regs., 42 Fed. Reg. 1470 (Jan. 7, 1977), is invalid, but did not discuss that contention on brief. Court accepted regulations as valid). Sec. 7.0(d), Temporary Income Tax Regs. was treated as valid in Young v. Commissioner, 83 T.C. 831, 835-838 (1984), affd. 783 F.2d 1201, 1206↩ (5th Cir. 1986).