**ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 96–817T.**

United States Court of Federal Claims.

June 21, 2004.

---

Michael A. Clark, Chicago, IL, for plaintiff. With him on briefs were J.H. Zimbler and Laura E. Juhnke, Chicago, IL, and Michael A. Nemeroff, Washington, D.C.

Benjamin C. King, Jr., Attorney, Tax Division, Department of Justice, for the United States. With him on briefs was Eileen J. O'Connor, Assistant Attorney General, and Mildred J. O'Connor, Chief, Court of Federal Claims Section.

## OPINION

BRUGGINK, Judge.

Before the court are the parties' cross-motions for summary judgment on Count V of plaintiff's complaint for refund of Railroad Retirement Tax Act ("RRTA") employment taxes and interest paid. Count V is limited to a claim for refund of interest paid on plaintiff's negotiated supplemental annuity tax ("SAT") liability. Oral argument was held on April 20, 2004. For reasons set out below, we grant plaintiff's motion.

## BACKGROUND

The narrow question presented is whether plaintiff must pay interest on admittedly underpaid taxes. It is necessary first, however, to lay the background as to how the underlying tax was calculated. Plaintiff, Atchison, Topeka & Santa Fe Railway Company ("ATSF"), owns and operates an interstate carrier railroad system. ATSF is subject to 26 U.S.C. §§ 3201, et seq. of the Internal Revenue Code (2000 & supp.2001), which imposes railroad retirement taxes on railroad employees' compensation. These taxes fund railroad employee retirement benefits, which are received in lieu of Social Security benefits. Under 26 U.S.C. § 3221(c), since re-

pealed,[1] SAT liability is imposed on "each man-hour for which compensation is paid."

Plaintiff, and other railroads, pay their union and non-union employees based on a variety of criteria, including hours, months, holidays, sick-pay, vacations, guaranteed minimums, buy-outs of unused sick days, and vacations. Railroad employers report RRTA liability on IRS Form CT–1. Instructions on Form CT–1 were the same from 1986 through 1993, and remained nearly identical for 25 years. In general, employees are instructed "to report work-hours for all compensation that involves a time or mileage factor." Before 1987, plaintiff, along with other railroads, reported and paid the SAT in accordance with these IRS instructions on Form CT–1. The net effect was that SAT was imposed on all paid man-hours, whether or not actually worked. From 1987 through 1993, however, plaintiff and four other railroads elected not to calculate SAT based solely on time or mileage but only paid SAT on man-hours actually worked. This marked a departure from plaintiff's prior practice of 20 years and was inconsistent with IRS instructions for Form CT–1.

The IRS protested plaintiff's position and proposed deficiency adjustments to plaintiff's 1987 through 1990 returns. This adjustment was set forth in a letter dated August 12, 1992, in which the IRS proposed a re-computation of SAT based on man-hours paid rather than man-hours worked. The IRS proposed the following increase in plaintiff's SAT liability:

> December 31, 1987-$ 3,827,527.20
> December 31, 1988-$ 1,927,332.68
> December 31, 1989-$ 2,597,733.84
> December 31, 1990-$ 2,313,834.38
> Total=$10,666,428.10

Two years later, the IRS modified its initial findings in a Summary of Employment Tax Examination, dated August 2, 1994. The revised SAT claimed was lower:

> December 31, 1987-$3,122,850.00
> December 31, 1988-$1,505,663.00
> December 31, 1989-$1,450,057.00
> December 31, 1990-$1,361,233.00
> Total=$7,439,803.00

Plaintiff appealed the 1987 through 1990 SAT findings to the Office of the Regional Director of Appeals. For taxable years 1991 through 1993, the IRS later raised the SAT issue during an examination.

The parties settled the entire SAT issue in a March 31, 1995 closing agreement ("Closing Agreement"). The Closing Agreement established that the principal SAT for 1987 through 1993 would be computed by treating each employee as having received monthly compensation based on an assumed number of man-hours rather than man-hours actually worked or paid. The Closing Agreement expressly states that plaintiff's SAT liability would be determined by multiplying the total number of employees paid compensation each month by a "hazard settlement" number of 179 hours per month.[2] The following are the agreed SAT liabilities based on the Closing Agreement formula:

> December 31, 1987-$2,229,394.00
> December 31, 1988-$ 218,361.00
> December 31, 1989-$ 117,630.00
> December 31, 1990-$ 406,356.00
> Total=$2,971,741.00

On April 18, 1995, the IRS sent plaintiff Forms 2504–AD and 2297 for plaintiff's 1987 through 1990 taxable years showing the adjusted amounts due, but accompanied by a letter indicating it was the IRS's position that interest was due on the amounts reflected in the forms. On May 11, 1995, the IRS sent plaintiff Form 2504 for plaintiff's 1991 through 1993 taxable years. The following are the agreed SAT liabilities based on the Closing Agreement formula for those years:

> December 31, 1991-$ 669,837.00
> December 31, 1992-$ 728,476.00
> December 31, 1993-$4,074,899.00
> Total=$5,473,212.00

On July 5, 1995, plaintiff's Vice President and Tax Counsel Daniel Westerbeck signed and returned forms 2504–AD, 2297 and 2504, along with payments of $2,971,741.00 and $5,473,212.00 and letters opposing the impo-

---

1. Hereafter, all references will be by section number to the relevant year of Title 26. Subsection (c) was repealed in December 2001. Pub.L. No. 107–90, § 203(b), 115 Stat. 878 (2001).

2. The parties agreed to this settlement number to avoid the hazards of litigation.

sition of interest. Plaintiff did not pay any interest at that time.

On September 20, 1995, after the settlement, the IRS notified plaintiff by letter that the Office of the Regional Director of Appeals had concluded its review of plaintiff's 1987 through 1990 taxable years. Prior to this date, the IRS had not given any notice or demand for any SAT payment for any of the years settled. On November 6, 1995, the IRS sent plaintiff Statements of Adjustment charging plaintiff interest for the following agreed SAT deficiencies:

> Taxable year 1987-$2,272,926.40
> Taxable year 1988-$ 178,244.44
> Taxable year 1989-$ 71,300.40
> Taxable year 1990-$ 181,005.20
> Total=$2,703,476.44

On November 11, 1995, the IRS sent plaintiff additional Statements of Adjustment charging plaintiff interest for the following agreed SAT deficiencies:

> Taxable year 1991-$183,916.87
> Taxable year 1992-$ 33,801.33
> Taxable year 1993-$473,452.15
> Total=$691,170.35

On November 20, 1995, Mr. Westerbeck sent a letter to the IRS protesting the Statements of Adjustment in which interest was charged. Nevertheless, on November 27, 1996, more than one year later, plaintiff paid the following amounts of interest under protest:

> Taxable year 1987-$2,542,832.01
> Taxable year 1988-$ 199,410.58
> Taxable year 1989-$ 78,226.25
> Taxable year 1990-$ 202,499.20
> Taxable year 1991-$ 183,916.87
> Taxable year 1992-$ 33,801.33
> Taxable year 1993-$ 473,452.16
> Total=$3,714,138.40

On December 10, 1996, plaintiff filed Form 843 claims for refund for each year of the above disputed interest amounts. On December 17, 1996, plaintiff paid the following additional amount of disputed interest to compensate for an IRS calculation error:

> Taxable year 1991-$ 8,012.61
> Taxable year 1992-$52,759.08
> Taxable year 1993-$16,216.25
> Total=$76,987.94

Also on December 17, 1996, plaintiff filed supplemental Form 843 claims for refund for the accompanying disputed interest payments.

Plaintiff contends that it is subject to the interest-free adjustment made available in 26 U.S.C. § 6205(a)(1) because the railroad did not have sufficient knowledge of the correct amount of tax until it reached an agreement with the IRS. The IRS rejected this position at the administrative level and instead concluded that plaintiff had intentionally elected to underpay its SAT due from 1987 through 1993 based on plaintiff's departure from twenty years of "industry practice" and the IRS's longstanding interpretation set out in the instructions to Form CT-1. Plaintiff brought suit here to recover the interest.

## DISCUSSION

■ As an employer subject to § 3221(c), before its repeal, plaintiff was required to pay supplemental annuity taxes on an hourly basis. Section 3221(c) provided in relevant part:

In addition to other taxes, there is hereby imposed on every employer an excise tax, with respect to having individuals in his employ, *for each man-hour for which compensation is paid* by such employer for services rendered to him during any calendar quarter ... With respect to daily, weekly, or monthly rates of compensation such tax shall apply to the numbers of hours comprehended in the rate together with the number of overtime hours for which compensation in addition to the daily, weekly, or monthly rate is paid. With respect to compensation paid on a mileage or piecework basis such tax shall apply to the number of hours constituting the hourly equivalent of the compensation paid.

26 U.S.C. § 3221(c) (emphasis added). Rather than resolving in the Closing Agreement what was meant by the term, "man-hour for which compensation is paid," the parties agreed to an assumed number of man-hours per month to calculate the SAT liability.[3]

---

3. The Treasury later adopted 26 C.F.R. § 31.3221–3, T.D. 8525, 1994–1 C.B. 267, 1994 WL 58085, which defined work-hours in § 3221 as "hours for which the employee is compensated, whether or not the employee performs services." 26 U.S.C. § 31.3221–3(b)(1). The

The sole question now is whether plaintiff is entitled to a refund of interest paid on its 1987 through 1993 SAT liability deficiencies. Typically, taxpayers are required to pay interest on tax deficiencies. Section 6601(a) directs that, "If any amount of tax imposed by this title ... is not paid on or before the last date prescribed for payment, interest on such amount ... shall be paid for the period from such last date to the date paid." Congress carved out an exception, however, in § 6601(k), which "prohibit[s] interest on certain adjustments in tax" for taxpayers subject to § 6205(a). Section 6205(a)(1) in turn, provides that:

> If less than the correct amount of tax imposed by section ... 3221 ... is paid with respect to any payment of wages or compensation, proper adjustments, with respect to both the tax and the amount to be deducted, shall be made, *without interest*, in such a manner and at such times as the Secretary may by regulations prescribe.

26 U.S.C. § 6205(a)(1) (emphasis added). Thus, taxes imposed under § 3221 can be adjusted without interest, even when less than the correct amount was initially reported.

The relevant Treasury regulation, applicable for the years in question, went on to explain that an employer who paid less than the correct amount of a § 3221 tax "shall correct the error as provided in this section [and][s]uch correction shall constitute an adjustment *without interest* to the extent provided in paragraph (b) ... of this section." 26 C.F.R. § 31.6205–1(a)(1) (emphasis add-

ed). The failure to pay the correct amount of tax thus constitutes an "error."

Paragraph (b) then uses the concept of "error" to establish the guidelines for an interest-free adjustment for an underpayment of tax with respect to compensation of employees under the RRTA. If less than the correct amount of a § 3221 tax is reported, the employer has to report the deficiency on a return filed "on or before the last day on which the return is required to be filed for the return period in which the error is ascertained." 26 C.F.R. § 31.6205–1(b)(2). The critical date, then, is when the "error" is ascertained. That, in turn, is explained by the regulation as occurring when the taxpayer has "sufficient knowledge of the error to be able to correct it." 26 C.F.R. § 31.6205–1(a)(4). The Treasury regulation provides further that an underpayment cannot be adjusted without interest "pursuant to this section after receipt from the district director of notice and demand for payment thereof based upon an assessment ...." 26 C.F.R. § 31.6205–1(a)(6). There was no notice and demand in this case.

The regulation thus establishes the parameters for a taxpayer to correct an underpayment of its § 3221 liability without interest—the taxpayer must promptly report any deficiency within the return period in which any error is "ascertained." An error is ascertained, in turn, when the taxpayer has sufficient knowledge to correct it, but, in any event, no later than a demand and notice.

The regulations provide no further guidance on what constitutes the ascertainment of an error.[4] Defendant contends that the

---

change in the regulation, in short, resolved any question as to the work-hours contemplated by the statute:

> Work-hours include regular time worked; overtime; time paid for vacations and holidays; time allowed for meals; away-from-home terminal time; called and not used, runaround, and deadheading time; time for attending court, participating in investigations, and attending claim and safety meetings; and guaranteed time not worked. Work-hours also include conversion hours, that is, compensation converted into work-hours. Conversion hours may be derived from payment by the mile or by the piece. Work-hours also include time for which the employee is paid for periods

of absence not due to sickness or accident disability, such as for routine medical and dental examinations or for time lost.

26 C.F.R. § 31.3221–3(b)(1)(i). The change came too late to help the government here, however.

4. We initially had misgivings as to whether § 6205(a)(1) applies to legal disputes at all. We requested supplemental briefing from the parties as to whether the legislative history of the provision shed any light on its proper application. Defendant, however, does not urge the court to view section 6205(a)(1) as applying only to factual disputes. Both parties agree that the legislative history does not speak to this issue.

critical inquiry is whether the IRS has made its own views known—in this case about the interpretation of the term "man hours for which compensation is paid." It contends that the IRS made its views known in the directions to Form CT-1, and that plaintiff's election to use a different understanding flew in the face of this instruction. Plaintiff takes the position that the test is not whether the taxpayer and IRS disagree, but whether the IRS has taken concrete steps in the particular circumstances to challenge plaintiff's return.

Important to our discussion is Revenue Ruling 75–464, 1975–2 C.B. 474, 1975 WL 35059 (1975) ("Revenue Ruling"), in which the IRS offered guidance on the application of 26 C.F.R. § 31.6205–1. In relevant part, it reads as follows:

> For purposes of section 31.6205–1(a)(4) of the [Treasury] regulations, certain employment taxes underpaid in error, discovered during an audit of the employer's returns, are "ascertained" and may be paid free of interest at the time the employer signs Agreement Form 2504 or at the time he pays the tax preparatory to filing a claim to contest the liability in court, after having exhausted all appeal rights within the Service, provided the payment is made before receiving notice and demand . . . .
>
> . . . .
>
> . . . Therefore, it has been the practice of the Service that if the return is audited, additional tax is found to be due, and the taxpayer accepts the adjustments proposed by the examining officer and signs the Agreement to Assessment and Collection of Additional Tax * * *, Form 2504, at the conclusion of the examination, the additional tax shall be due without interest. The agreement form executed by the taxpayer is considered to stand in lieu of a supplemental return as required by sections 31.6205–1(b) and/or (c) of the regulations.

> . . .
>
> Notwithstanding the interpretation in this Revenue Ruling of the allowance of interest free adjustments provided by section 6205 of the Code, the Service will not allow interest free adjustments in cases in which the taxpayer's returns for prior years were audited and additional tax found to be due with respect to the same issue involved in the current audit, nor in cases in which the taxpayer, after having been informed of his tax status as an employer, knowingly underreports his employment tax liability in subsequent years . . . .

Rev. Rul. 75–464.[5]

The Revenue Ruling thus provides a potential bright line test which plaintiff seizes upon. It appears to treat "ascertainment of the error" as synonymous with the conclusion of the administrative contest, but in no event later than receipt of notice and demand. The tax payment is thus interest-free if the tax is paid at the conclusion of administrative appeals, but prior to filing a refund claim and prior to the IRS issuing a notice and demand. A literal application of the Revenue Ruling thus suggests, according to plaintiff, that it did not and could not have had sufficient knowledge of its SAT deficiency until the matter was resolved, either at the completion of plaintiff's administrative appeal or, as in this case, when the parties settled the dispute. Plaintiff reasons that the error was not determined, within the meaning of the regulation, because it had not been finally decided by the agency.

Plaintiff also relies on *Eastern Inv. Corp. v. U.S.*, 49 F.3d 651 (10th Cir.1995). The error in *Eastern* was the employer's classification of its sales representatives as independent contractors instead of as employees for purposes of § 6205(a)(1). The taxpayer contended that "interest does not begin to accrue until there has been a final judicial

5. It is well understood that "[r]evenue rulings are not binding precedent, but are entitled to some weight, as reflecting an interpretation of the law by the agency entrusted with its interpretation." *Vons Companies, Inc. v. U.S.*, 51 Fed.Cl. 1, 12 (2001). *See also St. Louis Bank for Cooperatives v. U.S.*, 224 Ct.Cl. 289, 305, 624 F.2d 1041 (1980) ("[r]evenue rulings are not binding precedent, but they can provide some guidance . . . ."); *Helvering v. New York Trust Co.*, 292 U.S. 455, 468, 54 S.Ct. 806, 78 L.Ed. 1361 (1934). We may also "refer to . . . revenue rulings for guidance and accept that reasoning in whole or in part to assist [our] understanding of the language of the revenue code." *W. Co. of N. Am. v. United States*, 323 F.3d 1024, 1032 (Fed.Cir.2003).

determination of its tax liability," *id.* at 657, while the IRS argued that interest accrued from the date of assessment, which was earlier. The court, citing the Revenue Ruling, held that plaintiff "had sufficient knowledge of this error once [plaintiff] had exhausted all appeal rights within the Service."[6] *Id.*

The government's position was apparent, according to defendant, from the public instructions for Form CT–1, available for the taxable years in question. These instructions provided, "you are required to report work-hours for all compensation that involved a time or mileage factor." In the absence of a collective bargaining agreement, the taxpayer was required to "report the number of hours the individual involved usually works even though on occasion the employee may work fewer or more hours.... Unless otherwise provided in a collectively bargained rule, 174 hours should be used as the standard hourly factor for monthly related employees."[7] The 174 hour standard served as a baseline only, to which other hours were added if necessary.

Defendant argues, moreover, that plaintiff knew of the IRS's position because the Treasury adopted 26 U.S.C. § 31.3221–3 in February 1994, prior to the Closing Agreement. Although the regulation was only prospective in effect, defendant relies on the preamble, which explains that the new regulation adopted "the longstanding interpretation of work-hours that was included in the instructions for Form CT–1 when the supplemental annuity tax was enacted." 26 U.S.C. § 31.3221–3. Defendant thus believes that plaintiff had sufficient knowledge of the IRS's position, at the latest, when this Treasury regulation made clear that the IRS's interpretation had been previously expressed in the instructions.

6. The plaintiff was still held liable for interest in *Eastern Investment* because it did not pay the entire deficiency before filing a claim for refund.

7. This portion of the instructions remained the same on IRS Instructions for Form CT–1 from 1986 through 1993. Defendant initially argued, albeit erroneously, that the parties ultimately agreed to use 174 as the assumed number of man-hours in the Closing Agreement. The parties actually agreed that "[t]he hazard settlement

We believe plaintiff has the better of an admittedly close argument. In our view, the most straight-forward reading of the statute and regulations is that an error is "ascertained" when it is not, or no longer can be, contested administratively. Having the finality date at an earlier point leaves the matter subject to subjectivity and ambiguity. We are admittedly heavily influenced in this view by the Revenue Ruling and the Tenth Circuit's opinion in *Eastern Investment.*

Although it may dispute the characterization, implicit in defendant's argument is the assumption that a taxpayer may not challenge the IRS without losing the benefit of the interest-free provision of section 6205. We disagree. In our view, the better position, expressed in the Revenue Ruling and *Eastern Investment,* is that the taxpayer may dispute an IRS interpretation, interest free, up until the IRS challenge is objectively clear and targeted at the particular taxpayer—namely, up until the time at which the IRS has issued a notice and demand letter, the parties have reached a settlement agreement, or when the taxpayer has exhausted all appeal rights within the IRS.

■ We also disagree with defendant that the instructions for Form CT–1 furnished plaintiff and other railroads the binding position of the IRS. "It is hornbook law that informal publications all the way up to revenue rulings are simply guides to taxpayers, and a taxpayer relies on them at his peril." *Caterpillar Tractor Co. v. United States,* 218 Ct.Cl. 517, 523, 589 F.2d 1040 (1978). Nor can the subsequent adoption of § 31.3221–3 be said to resolve the matter simply by a self-serving reference to the "longstanding" interpretation of Form CT–1.

■ The final paragraph of the Revenue Ruling identifies two exceptions to interest-

number for taxable years ended December 31, 1987 through 1993 is 179 hours" in the Closing Agreement. Because of this error, defendant erroneously asserted that the settlement number was the same as the number required by IRS instructions for Form CT–1, suggesting plaintiff had sufficient knowledge of its error from the outset. In reality, the parties agreed to a number higher than that allegedly required by the IRS instructions.

free treatment: (1) where the taxpayer's returns for prior years were audited and additional tax found to be due with respect to the same issue, and (2) where a taxpayer, having been informed of its tax status as an employer, knowingly underreports income. Defendant suggests that the facts here trigger the second limitation because ATSF made a "considered decision to disregard longstanding IRS instruction." Def.'s Cross–Mot. for Summ. J. at 8. We view this limitation as tantamount to a "bad faith" exclusion. Section 6205 cannot be used to avoid paying interest when there is no legitimate basis for delaying payment of taxes.

In the present circumstances, we do not believe plaintiff's position as to § 3221(c) was taken in bad faith. Plaintiff did not challenge whether it owed SAT for taxable years 1987 through 1993, but rather disputed the correct SAT calculation methodology. The interpretation of § 3221(c) was still contested until final agreement was reached between the plaintiff and the IRS in 1995. The 179 man-hour figure in the Closing Agreement was a compromise. As plaintiff points out, the IRS's proposed total SAT deficiency in 1992 of $10,666,428.10 for years 1987 through 1990, (later reduced in 1994 to $7,439,803.00), was significantly greater than the $2,971,741.00 deficiency to which the parties eventually agreed in 1995. The fact that the IRS was willing to settle on an assumed number of man-hours worked indicates that plaintiff's position was not baseless. We note, finally, that the wording of the Form CT–1 instructions does not have the ring of inevitability. The examples and details set out in the instructions appear to have required the exercise of some judgment, and the classification of included and excluded compensations, as well as the baseline number used, 174, would not seem to have been inexorable.[8] They were, in short, merely an expression of the IRS's interpretation, but not beyond dispute.

## CONCLUSION

Plaintiff's motion for summary judgment on Count V is granted and defendant's cross-motion for summary judgment is denied. Plaintiff's payment of SAT was made within the shelter period of section 6205. Accordingly, plaintiff is entitled to a full refund of interest. The parties are directed to attempt to calculate the amount of plaintiff's recovery and to prepare a joint status report indicating their positions on damages, as well as with respect to whether a RCFC 54(b) judgment is appropriate. The joint status report is to be filed on or before July 16, 2004. Final judgment is deferred pending further order.

---

8. One major category of compensation, for example, severance pay, was excluded for some years and included for others.