ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Plaintiff,

v.

The **UNITED STATES,** Defendant.

No. 96–817T.

United States Court of Federal Claims.

Aug. 6, 2004.

Michael A. Clark, Sidley, Austin, Brown & Wood, LLP, Chicago, IL, for plaintiff. With him on the briefs were Jay H. Zimbler and Laura E. Juhnke.

Benjamin C. King, Jr., Attorney, Tax Division, Department of Justice, for the United States. With him on briefs were Eileen J. O'Connor, Assistant Attorney General, Mildred L. Seidman, Chief, Court of Federal Claims Section, and David Gustafson, Assistant Chief.

## OPINION

BRUGGINK, Judge.

Before the court are the parties' cross-motions for summary judgment on Count III of plaintiff's complaint for refund of Railroad Retirement Tax Act ("RRTA") taxes paid by plaintiff with respect to employer and employee contributions to a 401(k) plan ("the Plan") for the benefit of Atchison, Topeka & Santa Fe Railway Co. ("ATSF") employees for 1983 through 1987. Oral argument was held on June 23, 2004. For reasons set out below, we conclude that plaintiff is not entitled to a refund.[1]

## BACKGROUND

ATSF owns and operates an interstate carrier railroad system, and is a railroad common carrier under Part I of the Interstate Commerce Act. As such, ATSF is subject to the Railroad Retirement Act[2] and the Railroad Retirement Tax Act ("RRTA").[3] Taxes imposed by the RRTA are used to finance railroad employee retirement benefits, which railroad employees receive in lieu of social

---

1. In a related decision arising in this same case, we recently granted plaintiff's motion for summary judgment with respect to Count V. See *Atchison, Topeka & Santa Fe Ry. Co. v. United States*, 61 Fed.Cl. 84 (2004).

2. 45 U.S.C. §§ 231–231v (2000).

3. 26 U.S.C. §§ 3201–3241 (2000).

security benefits, and are imposed on all "compensation." Taxes imposed by the Federal Insurance Contributions Act ("FICA"),[4] on the other hand, are used to finance social security and medicare benefits and are imposed on "wages." Railroad employers collect and pay RRTA taxes, rather than FICA taxes, and file with the Internal Revenue Service ("IRS") the Employer's Annual Railroad Retirement Tax Return (Form CT–1), rather than the forms filed with respect to FICA.

During the years at issue in this case, 1983 to 1987, the Plan was offered by ATSF to its employees. The Plan was a qualified cash or deferred arrangement as defined in 26 U.S.C. § 401(k).[5] Beginning on July 1, 1983, ATSF allowed its employees to make pre-tax contributions to the Plan. Beginning on that date, ATSF paid RRTA taxes with respect to the employees' pre-tax contributions at the time those contributions were made. ATSF made employer matching contributions to the Plan on behalf of its employees. However, ATSF did not pay RRTA taxes on its employer matching contributions to the Plan until 1987.

In 1983, Congress amended FICA to require that section 401(k) contributions be treated as "wages." Social Security Amendments of 1983, Pub.L. No. 98–21, § 324(a)(1).[6] As a railroad employer, ATSF did not believe it was subject to these provisions. From 1984 through June 1, 1987, ATSF continued to file Form CT–1 treating employee pre-tax contributions to the Plan as subject to RRTA taxes and paid the RRTA taxes it computed to be due with respect to such contributions. ATSF did not pay RRTA on its employer matching contributions to the Plan during this period.

On June 1, 1987, ATSF amended the Plan to allow for the immediate vesting of employer matching contributions. Beginning on that date, with respect to those employees who elected immediate vesting, ATSF began paying RRTA taxes with respect to its em-

ployer matching contributions when those contributions were made, in addition to continuing to pay RRTA taxes on employee pre-tax contributions. ATSF also amended its prior returns to report the employer matching contributions made from July 1, 1983 to May 31, 1987 as taxable payments at the time they were paid. It retroactively paid the RRTA taxes that it computed to be due with respect to those contributions.

During one or more years between 1985 and 1987, other RRTA employers, including Amtrak, the Association of American Railroads ("AAR"),[7] and RAILINC Corp., also included section 401(k) contributions in the taxable wage base in their original returns and paid RRTA taxes thereon. However, in a general information letter dated August 15, 1988, issued by the IRS at the request of AAR, the IRS stated that "it is the position of the Service that the contributions to a 401(k) plan by a railroad carrier for a railroad employee are not includable in the employer's compensation base for either tier 1 or tier 2 RRTA purposes." Marsh Aff. Ex. 9, ¶ 10.

Following issuance of this letter, some RRTA employers that had included section 401(k) contributions in the taxable wage base on their original returns filed claims for refunds. On February 16, 1989, both RAILINC and AAR sought such refunds. On February 24, 1989, ATSF timely filed claims for refund with respect to its 1983 through 1986 tax years, asserting that it erroneously overpaid its RRT for 1983 through 1987 with respect to the 401(k) contributions. On May 2, 1996, ATSF also timely filed a claim for its 1987 tax year.

At some time during 1989, shortly after its claims were filed, Amtrak received its requested refunds. On January 30, 1990, AAR received a refund with respect to its claim for 1988. On February 6, 1990, RAILINC received refunds with respect to claims for 1985, 1986, and 1987. At some point prior to May 11, 1990, the IRS issued refunds to

---

4. 26 U.S.C. §§ 3101–3128 (2000).

5. All references are to the relevant years of the Tax Code, cited hereafter as IRC § _____.

6. Effective for contributions made after December 31, 1983.

7. The AAR is the trade association to which most large railroad employers belong.

AAR for its 1985 and 1987 claims. On August 12, 1992, however, ATSF's claims for refund for tax years 1983 to 1986 were denied based on the purported effective date of IRC § 3231(e)(9), discussed below. On December 18, 1996, ATSF's claim for refund for 1987 was denied on the same basis.

In the interim, on December 19, 1989, Congress enacted the Omnibus Budget Reconciliation Act of 1989 ("OBRA"). Pub.L. 101–239, 103 stat. 2475 (1989). OBRA added section 3231(e)(9) to the IRC. That section directed the inclusion in the RRTA wage base of all amounts described in section 3121(v), which specifically included 401(k) plans. Section 3231(e)(9) states in pertinent part:

> (9) Treatment of certain deferred compensation and salary reduction arrangements—
> (A) Certain employer contributions treated as compensation—Nothing in any paragraph of this subsection (other than paragraph 2) shall exclude from the term "compensation" any amount described in subparagraph (A) or (B) of section 3121(v)(1).

IRC § 3231(e)(9).

The legislative history related to this portion of OBRA makes it clear that the purpose of the amendment was to bring the definition of "compensation" in the RRTA in line with the definition of "wages" in FICA: "Contributions to 401(k) deferred compensation plans would be subject to the railroad retirement payroll tax, bringing the treatment of 401(k) plans into conformity with their treatment under the Social Security Act." H.R.Rep. No. 101–247, at 914 (1989), reprinted in 1989 U.S.C.C.A.N. 1906, 2385. The conference report is to the same effect:

> The RRTA would be amended to bring the treatment of deferred compensation arrangements and ·pensions generally, into conformity with their treatment under FICA. Thus, employer-sponsored tax-qualified plans generally would be specifically excluded from the definition of compensation under RRTA and would therefore not be subject to railroad retirement taxes. However, contributions to qualified 401(k) cash or deferred arrangements and contributions to nonqualified deferred compensation plans would both be included in compensation (and would therefore be subject to railroad retirement payroll taxes) to the same extent they are now included in wages for FICA purposes.

H.R. Conf. Rep. No. 101–386, at 700 (1989) reprinted in 1989 U.S.C.C.A.N. 3018, 3303. The net effect of these changes, therefore, was that all contributions to retirement plans were to be treated as taxable "compensation" under the RRTA.

Section 10206(c)(2)(A) of OBRA provides the effective date of section 3231(e)(9). That section states:

> (A) In general—The amendment made by subsection (b) [§ 3231(e)(9) ] shall apply to—
> (i) remuneration paid after December 31, 1989, and
> (ii) remuneration paid before January 1, 1990, which the employer treated as compensation when paid.

Pub.L. 101–235 § 10206(c)(2)(A), 103 Stat. 2475.

The House Conference Report clarifies Congress' intent to apply the provisions of section 3231(e)(9) retroactively to prevent taxpayers like ATSF from obtaining refunds of tax paid with respect to 401(k) contributions made prior to January 1, 1990. The rationale for doing so was clearly expressed:

> Due to confusion about the taxable status of this remuneration, some employers may have withheld and paid payroll taxes on remuneration paid before January 1, 1990. Because these amounts would already have been credited for benefit purposes, and because it is likely that some employees would already have begun receiving benefits based on the crediting of such amounts, no refund of taxes paid on remuneration paid before January 2, 1990, would be made.

H.R. Conf. Rep. No. 101–386, at 700 (1989) reprinted in 1989 U.S.C.C.A.N. 3018, 3303.

Defendant, in its motion, ask this court to grant it summary judgment on Count III of plaintiff's complaint. ATSF, for its part, asks this court to hold that, as a matter of

law, it is not liable for RRTA taxes on contributions to the Plan in 1983–1987. ATSF makes four separate arguments: (1) that other similarly situated taxpayers received RRTA refunds while ATSF did not, in violation of the doctrine of equality of treatment; (2) Congress may not, ex post facto, eliminate a post-deprivation remedy because doing so would violate due process; (3) such treatment also violates the equal protection component of the Due Process Clause; and (4) OBRA section 10206(c)(A) did not retroactively apply to employer matching contributions made prior to June 2, 1987. For reasons set out below, defendant's motion is granted.

## DISCUSSION

### I. Equality of Treatment

Plaintiff's first argument is that defendant violated the doctrine of "equality of treatment" when the IRS paid the claims of at least three other similarly situated RRTA employers and not similar claims filed by ATSF. In August 1988, the IRS advised AAR that, in its view, section 401(k) contributions were not includable in the RRTA wage base. Based on this advice, ATSF and other RRTA employers that had included such contributions in their original returns filed refund claims. Amtrak filed its claims for 1985–1988 some time in early 1989, RAILINC and AAR filed their claims for 1985–1988 on February 16, 1989, and ATSF filed its claims for 1983–1985 on February 24, 1989. Amtrak, RAILINC, and AAR's claims were granted and ATSF's claims were denied. The IRS denied ATSF's claims on the basis that section 3231(e)(9), added to the Code by OBRA, applied to the contributions at issue, making those contributions subject to RRT. This treatment, in ATSF's opinion, violates the doctrine of equality of treatment.

We note at the outset that at the time ATSF's refund claims were denied, the OBRA changes were in place. Consequently, the IRS was literally applying the law in denying ATSF's claims. In short, the IRS had effectively been instructed to reject the

refund claims. Consequently, ATSF's argument has to be that the IRS improperly chose to grant refunds to other similarly situated taxpayers. We note that these other taxpayers had filed their claims at an earlier date than ATSF, although it is also true that some claims were paid out after enactment of OBRA.[8]

■ The doctrine of equality of treatment has been stated as follows:

> Although an agency may make rules and may exercise discretion in that regard, it is bound by some requirement of equality—that is, it must treat similarly situated persons equally .... If one party is treated differently than another similarly situated party, the agency must state the reasons for the apparent inconsistency.

M. SALTZMAN, IRS PRACTICE & PROCEDURE, at 1.06[2] (2001).

■ This doctrine is cited as having originated in *United States v. Kaiser,* 363 U.S. 299, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960), in a concurring opinion authored by Justice Frankfurter. *See Int'l Bus. Machs. Corp. v. United States,* 170 Ct.Cl. 357, 366–67, 343 F.2d 914 (1965)("*IBM*"). In *Kaiser,* the Court affirmed a decision of the Second Circuit in favor of a taxpayer who had failed to report financial assistance received from a union. The Court determined that it was appropriate for a jury to determine whether the financial assistance was a "gift" excluded from income under the Internal Revenue Code of 1954. *Kaiser,* 363 U.S. at 303–05, 80 S.Ct. 1204. Writing separately, Justice Frankfurter addressed an alternate argument raised by the taxpayer but unaddressed by the majority. The taxpayer had pointed out that in a number of rulings the IRS had determined that certain "subsistence relief" payments were not taxable, and that the money received from the union was not relevantly different. *Id.* at 305, 80 S.Ct. 1204. Justice Frankfurter was amenable to this argument, although he ultimately rejected its application in *Kaiser:*

---

8. With the possible exception of AAR, however, the other taxpayers' claims had been approved

prior to OBRA.

The only reason urged in this case for holding the Commissioner bound to follow rulings of non-taxability which he considers inapplicable is respect for an overriding principle of "equal" tax treatment. The Commissioner cannot tax one and not tax another without some rational basis for the difference. And so, assuming the correctness of the principle of "equality," it can be an independent ground of decision that the Commissioner has been inconsistent, without much concern for whether we should hold as an original matter that the position the Commissioner now seeks to sustain is wrong.

*Id.* at 308, 80 S.Ct. 1204. In Justice Frankfurter's view, the rulings cited by the taxpayer were distinguishable from the case at bar and the IRS could tax such union financial assistance. *Id.* at 309, 80 S.Ct. 1204. He concurred in the majority's decision, however, on the grounds that it was appropriate for the jury to decide that the payment in question was a "gift." *Id.* at 316–17, 80 S.Ct. 1204.

Justice Frankfurter's dicta was resurrected by our predecessor court, the United States Court of Claims, in *IBM*. In that decision the court found in favor of the taxpayer, holding that the IRS ran afoul of the doctrine of equality of treatment when it issued inconsistent letter rulings to two similarly situated taxpayers. *IBM*, 170 Ct.Cl. at 368, 343 F.2d 914. IBM and Remington were competitors in the manufacture, sale, and leasing of larger electronic computer systems. On April 13, 1955, Remington requested a ruling from the IRS that certain of its computing devices were not subject to an excise tax. Two days later, April 15, the IRS issued a private ruling providing Remington with a positive answer. IBM filed a similar request with the IRS on July 13. In July of 1956 Remington received a refund. On November 26, 1957, in response to IBM's request for a letter ruling, the IRS informed IBM that its machines were taxable. In May of 1957, the IRS informed Remington that it had changed its position and that the machines in question would be taxed, but only prospectively.

The court ruled that this type of disparate treatment was impermissible. It noted that under IRC § 7805(b) (1954), "The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect." In the court's opinion, implicit in this Congressional grant of discretion under section 7805(b) is the "power as well as the obligation to consider the totality of the circumstances surrounding the handing down of a ruling— including the comparative or differential effect on the other taxpayers in the same class." *Id.* at 366–67, 343 F.2d 914. Therefore, in making a determination of whether to apply a ruling or regulation retroactively, the IRS may not act arbitrarily. The court ruled that in the facts before it, there were no legitimate grounds for the disparate treatment afforded IBM and that IBM should be given a refund for the same period that Remington enjoyed. *Id.* at 372–73, 343 F.2d 914.

This court has been reluctant to extend the holding of *IBM* beyond the facts of that case. *Vons Companies, Inc. v. United States*, 51 Fed.Cl. 1, 10 n. 10 (2001); *Diebold, Inc. v. United States*, 16 Cl.Ct. 193, 212–13 (1989); *Carpenter v. United States*, 7 Cl.Ct. 732, 739–40 (1985); *see also Knetsch v. United States*, 172 Ct.Cl. 378, 391 n. 14, 348 F.2d 932 (1965); *Bornstein v. United States*, 170 Ct.Cl. 576, 586 n. 2, 345 F.2d 558 (1965). The most recent discussion of the *IBM* case is contained in *Florida Power & Light Co. v. United States*, 56 Fed.Cl. 328 (2003), *aff'd*, 375 F.3d 1119 (Fed.Cir.2004). In that case, the court rejected a taxpayer's argument that it could rely on private letter rulings issued to other taxpayers. The court pointed out that private letter rulings are individualized responses to particularized inquiries from specific taxpayers which have no precedential value. *Id.* at 334. Therefore, plaintiffs "cannot claim entitlement to a particular tax treatment on the basis of a ruling issued to another taxpayer." *Id.* In the court's opinion, the *IBM* ruling was based on the restrictions placed on the IRS by section 7805(b), which limited the scope of the IRS's discretion. *Id.* Section 7805(b) itself prohibited the IRS from handling a request for a letter

ruling in an inequitable or unfair manner. Having never requested a revenue ruling of its own, the plaintiff was unable to make a similar claim. *Id.* at 335.

We too decline to expand *IBM* beyond its unique facts. We are not presented with dueling revenue rulings. Indeed, the taxpayer here never requested a revenue ruling. ATSF simply filed refund claims based on a general information letter addressed to AAR. Therefore, for plaintiff to succeed on an "unequal treatment" argument, it must be considered through the more conventional prism of the equal protection component of the Due Process Clause, discussed below in Part III.

*II. Due Process*

██ Plaintiff's second argument is that section 10206(c)(2)(A)(ii), by making section 3231(e)(9) retroactive, affected an ex post facto elimination of ATSF's procedural rights in violation of the Due Process Clause of the Fifth Amendment. Plaintiff's analysis is as follows. Prior to the enactment of OBRA, ATSF could choose between two courses of action. First, it could refrain from including 401(k) contributions in the wage base on the employment returns as filed. Then, if tax deficiencies were proposed on audit, ATSF could take an administrative appeal, and, if unsuccessful, could litigate the issue. ATSF's other option was to include the contributions in the wage base on the return as filed and then file a claim for refund. ATSF chose the second option. Congress, however, enacted OBRA, adding section 3231(9) to the Code and precluding ATSF's refund claims. OBRA section 10206(c)(2)(A)(ii) made section 3231(9) selectively retroactive—those who chose the second option, like ATSF, were made subject to the tax. Those who chose the first option, and refrained from including section 401(k) contributions in the wage base, were exempted. ATSF characterizes this as an ex post facto elimination of a procedural right.

Plaintiff relies primarily on *Reich v. Collins,* 513 U.S. 106, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994). In *Reich,* a federal military officer sued the state of Georgia seeking a refund for taxes paid on retirement benefits received from the federal government. For several years, many states, including Georgia, had exempted retirement benefits paid by the state from state personal income tax but had not exempted similar benefits paid by the federal government. The Supreme Court held that this tax scheme violated the intergovernmental tax immunity doctrine. *Davis v. Mich. Dep't of Treasury,* 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). After *Davis,* many of these states, including Georgia, repealed their special tax exemptions for state retirees but did not offer federal retirees refunds for the unconstitutional taxes they had paid prior to *Davis.* *Reich* filed suit in Georgia state court seeking refunds of these taxes under Georgia's tax refund statute. That statute provided: "A taxpayer shall be refunded any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from him under the laws of this state, whether paid voluntarily or involuntarily ...." GA. CODE ANN. § 48–2–35(a) (Supp. 1994). Reich's refund was denied and the Georgia Supreme Court affirmed, explaining that the refund statute did not apply to "the situation where the law under which the taxes are assessed and collected is itself subsequently declared to be unconstitutional or otherwise invalid." *Reich v. Collins,* 262 Ga. 625, 422 S.E.2d 846, 849 (1992).

The Supreme Court reversed, relying on the line of cases leading up to *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Florida Department of Business Regulation,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). *Reich,* 513 U.S. at 110–11, 115 S.Ct. 547 (citations omitted). These cases "stand for the proposition that 'a denial by a state court of a recovery of taxes exacted in violation of the laws or Constitution of the United States by compulsion is itself in contravention of the Fourteenth Amendment.'" *Id.* at 109, 115 S.Ct. 547 (citing *Carpenter v. Shaw,* 280 U.S. 363, 369, 50 S.Ct. 121, 74 L.Ed. 478 (1930)). The Court agreed that Georgia could offer an exclusively pre-deprivation remedial scheme, but what the state could not do was "to reconfigure its scheme, unfairly, in *midcourse*—to 'bait and switch.'" *Id.* at 111, 115 S.Ct. 547. The state, in short, could not offer both a pre-

deprivation and post-deprivation remedy and then terminate the post-deprivation remedy once the pre-deprivation was no longer available.

Plaintiff asserts that it has experienced the same "bait and switch" action criticized in *Reich.* We disagree. This is not a case in which the federal government altered the procedure by which a taxpayer may seek a refund. ATSF did not lose its procedural right to seek a refund. Rather, ATSF protests the retroactive nature of OBRA itself. It objects to the fact that OBRA made section 3231(e)(9) retroactive only as to those who chose to include 401(k) contributions in the RRTA taxable wage base, while allowing those employers who did not do so off the hook.

The present case more closely resembles those cases stemming from the 1983 amendment of FICA and the Deficit Reduction Act of 1984, Pub.L. No. 98–369, 98 Stat. 494 (1984) ("DRA"). *See, e.g., New England Baptist Hosp. v. United States,* 807 F.2d 280 (1st Cir.1986); *Canisius Coll. v. United States,* 799 F.2d 18 (2d Cir.1986); *Temple Univ. v. United States,* 769 F.2d 126 (3d Cir.1985), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2914, 91 L.Ed.2d 544 (1988); *Robert Morris Coll. v. United States,* 11 Cl.Ct. 546 (1987). In 1983 Congress amended FICA to make contributions made by employees to voluntary salary reduction annuity plans subject to FICA tax. IRC § 3121(a)(5)(D). Section 2662(g) of the DRA provided that the 1983 amendment enacting section 3121(a)(5)(D) applied to payments made prior to March 3, 1983 "which the employer treated as wages when paid." 98 Stat. 494, 1160. This is the same language used in section 10206(c)(2)(A) of OBRA. Taxpayers who prior to March 4, 1983 treated their contributions to voluntary salary reduction annuity plans as subject to FICA tax sought refunds of the taxes they had paid. Those taxpayers argued that section 2662(g) of the DRA violated the Due Process Clause of the Fifth Amendment. That argument was uniformly rejected.

In *New England Baptist,* the court noted the caution with which a court should approach overturning retroactive tax legisla-

tion: "[W]e must exercise extreme caution before overriding Congress' judgment, especially in the field of taxation, in which the courts have been very reluctant to invalidate retroactive tax legislation." *New England Baptist,* 807 F.2d at 284. For a court to invalidate retroactive taxation, "the result must be so harsh and oppressive as to amount to a denial of due process." *Id.* (quoting *Picchione v. Commissioner,* 440 F.2d 170, 173 (1st Cir.1971)). This test "does not differ from the prohibition against arbitrary and irrational legislation." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 733, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). However, "in each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation." *Welch v. Henry,* 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938). Applying this test, the First, Second, and Third Circuits agreed that the retroactivity of the 1983 FICA amendment at issue was neither "harsh and oppressive" nor "arbitrary and irrational." *Canisius Coll.,* 799 F.2d at 25–27; *New England Baptist,* 807 F.2d at 285; *Temple Univ.,* 769 F.2d at 134–35; *see also Robert Morris,* 11 Cl.Ct. at 553–54.

Part of the reasoning of these courts was that the 1984 provision "merely ratifi[ed] past action of the Treasury Department taken in conformity with longstanding department practice." *Canisius Coll.,* 799 F.2d at 26. A Ruling issued in 1965 had set out the Department's understanding that amounts paid by an employer for annuity contracts under a salary reduction plan were includable in FICA wages. Rev. Ruling 65–208, 1965–2 C.B. 383, 1965 WL 13027. However, the validity of this ruling was cast into doubt by the opinion of the Supreme Court in *Rowan Companies, Inc. v. United States,* 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981). The 1983 FICA amendments and the 1984 DRA were enacted, in part, to clarify this issue. The "corrective" nature of the retroactive legislation at issue weighed in favor of its constitutionality. In *Canisius,* the court stated:

In light of its curative purpose, we find the provision constitutional notwithstanding the long period of retroactivity.... Congress' concern was that a failure to make retroactively lawful the taxes in issue, which had for years been collected in conformity with 65–208, would require refunds of monies that had provided a portion of the tax base of the social security system and necessitate some reduction of benefits to and recoupment of past benefits from current recipients.

*Canisius Coll.,* 799 F.2d at 27.

The situation here is comparable. Clearly, there was some confusion concerning whether contributions should be included in the taxable wage base. The plaintiff and other RRTA employers, however, relying on the FICA provisions, apparently anticipated that their 401(k) contributions were subject to the RRTA. The 1988 general information letter issued to AAR, unfortunately, made the situation more confusing. The following year, Congress enacted OBRA which amended the Code to make it clear that 401(k) plans were to be included as "compensation," and made the effect retroactive as to "remuneration paid before January 1, 1990, which the employer treated as compensation when paid." Congress explained that refunds would not be allowed on remuneration treated as compensation, "Because these amounts would already have been credited for benefit purposes, and because it is likely that some employees would already have begun receiving benefits based on the crediting of such amounts ...." H.R. Conf. Rep. No. 101–386, at 700 (1989) *reprinted in* 1989 U.S.C.C.A.N. 3018, 3303.

While the legislation at issue here did not "merely ratify" past Treasury Department action as the court found in *Canisius,* we believe OBRA had a "corrective" purpose similar to the 1983 FICA amendments and the 1984 DRA. The stated purpose of applying section 3231(9)(e) to payments treated as taxable prior to January 1, 1990 was to prevent the retirement benefits of employees from being prejudiced, because those "amounts would already have been credited for benefit purposes." This is the same reasoning offered in support of the DRA's retroactive application of the 1983 FICA amendments. Plaintiff has offered no convincing counter-argument that the government's explanation was fraudulent or irrational. We accept Congress' reasoning and find the retroactivity at issue here neither "harsh and oppressive" nor "arbitrary and irrational."

*III. Equal Protection*

ATSF also makes the related argument that section 10206(c)(2)(A) violates the Due Process Clause of the Fifth Amendment, because, as a matter of equal protection, it arbitrarily and irrationally discriminates against taxpayers filing refund claims as contrasted with its treatment of taxpayers taking similar positions on original returns. The Supreme Court has held that a Federal statute violates the equal protection component of the Fifth Amendment only under very limited circumstances. "Generally, statutory classifications are valid if they bear a rational relation to a legitimate governmental purpose.... Legislatures have especially broad latitude in creating classifications and distinctions in tax statutes." *Regan v. Taxation with Representation,* 461 U.S. 540, 547, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983).

ATSF argues that the government's disparate treatment of taxpayers filing refund claims in contrast with its treatment of taxpayers taking similar positions on original returns "is not just arbitrary but affirmatively irrational" in two respects. First, section 10206(c)(2)(A) provides an affirmative benefit to those employer who took an "aggressive position" and did not include 401(k) contributions in the RRTA wage base on their original returns, but "punished" those who included 401(k) contributions and then sought refunds. Second, while section 3231(e)(9) purports to be an after the fact attempt to conform the treatment of RRTA employer with the treatment of FICA employers, OBRA section 10206(c)(2)(A) treats those same RRTA employers who included 401(k) contributions worse than FICA employers. Under OBRA, RRTA employers are compelled to pay taxes on section 401(k) contributions for all open years, including 1983 and other years prior to 1984, the effective date of 3121(v), the FICA counterpart to

OBRA 3231(e)(9). Thus, argues plaintiff, FICA employers have to include section 401(k) contributions in the wage base but only for contributions made in 1984 and later years while RRTA employer who included 401(k) contributions before enactment of section 3231(e)(9) have to include 401(k) contributions in the wage base for all contributions made in any year including years prior to 1984. By precluding RRTA employers from filing refund claims for years prior to the year in which the law was changed for FICA, OBRA, in plaintiff's opinion, treats RRTA employers in an inequitable manner.

We find neither of these arguments persuasive. Regarding plaintiff's first argument, we note that a similar argument was rejected in cases involving the 1983 amendments to FICA and the DRA. *See, e.g., Temple Univ.*, 769 F.2d at 134; *Robert Morris*, 11 Cl.Ct. at 554. We believe the substance of section 3231(e)(9) and its retroactive application pursuant to OBRA section 10206(c)(2)(A)(ii) has a rational basis. As we discussed above, Congress had a reason for distinguishing between a taxpayer who treated 401(k) contributions as taxable when paid, and paid the tax, and one who did not—employees had received or were expecting retirement benefits based on plaintiff's prior treatment.

As to plaintiff's second equal protection argument, we first note that there is some disagreement between the parties as to whether the FICA amendment subjecting 401(k) contributions to FICA tax was retroactive as to employers who included such contributions in the taxable wage base prior to 1984. Even assuming plaintiff's characterization of OBRA section 10206(c)(2)(A) as compared to FICA is accurate, we do not believe Congress has acted irrationally. The fact that OBRA tax liability may not track FICA liability exactly does not undermine Congress' stated intent to bring "the treatment of deferred compensation arrangements and pensions *generally,* into conformity with their treatment under FICA." H.R. Conf. Rep. No. 101–386, at 700 (1989) *reprinted in* 1989 U.S.C.C.A.N. 3018, 3303 (emphasis supplied). More fundamentally, there is no constitutional requirement that Congress treat FICA employers and RRTA employers identically. The retroactive tax liability imposed by OBRA section 10206(c)(2)(A)(ii) is rational, and does not violate plaintiff's equal protection rights under the Due Process Clause.

*IV. Statutory Construction*

Plaintiff's final argument is that it is entitled to summary judgment on those portions of its claim related to the pre-June 2, 1987 employer matching contributions. As explained above, from July 1, 1983 to June 1, 1987 ATSF did not include certain employer matching contributions in the RRTA wage base. Beginning on June 2, 1987 ATSF began including these contributions in the RRTA wage base and filed amended returns and paid the taxes due on the pre-June 2, 1987 contributions. By its own terms, OBRA section 10206(c)(A)(ii) applies section 3231(e)(9) retroactively only with respect to "remuneration paid before January 1, 1990, which the employer treated as compensation *when paid.*" (Emphasis supplied). ATSF argues that because ATSF did not treat the pre-June 2, 1987 employer matching contributions as compensation *when paid,* OBRA section 10206(c)(2)(A)(ii) is inapplicable.

We disagree with plaintiff's interpretation of section 10206(c)(2)(A). We do not read that section as applying only to *original* returns to the exclusion of any *amendment* of such returns. By amending its returns to include the pre-June 2, 1987 employer matching contributions, ATSF changed the original returns themselves, and thus brought them within the express terms of section 10206(c)(2)(A).

## CONCLUSION

Defendant's motion for summary judgment as to Count III is granted, and plaintiff's cross-motion is denied. The parties are directed to file a joint status report as to plaintiff's remaining claims on or before August 25, 2004. Final judgment is deferred pending further order.